IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| SAMANTHA D. REED, | ◊ | |
| | ◊ | |
| Plaintiff, | ◊ | |
| | ◊ | |
| vs. | ◊ | No. 06-2236-Ma/V |
| | ◊ | |
| STATE OF TENNESSEE, et al., | ◊ | |
| | ◊ | |
| Defendants. | ◊ | |
| | ◊ | |

ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER OF DISMISSAL
ORDER DENYING APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

Plaintiff Samantha D. Reed filed a pro se complaint on April 21, 2006, entitled "Civil Complaint Against State of Tennessee Executive Branch[,] the Courts of the State of Tennessee, Chancery Court of Shelby County for Violation of the 14th Amendment of the U.S. Constitution of Due Process, and the Right to Be Heard, Federal Laws, Tennessee Code of [sic] Annotated Laws, Tennessee Judicial Codes and Ethics, Tennessee Code of Rules of Civil Procedure in a Pending Civil Suit Presented by a Pro Se Litigant," along with a motion seeking leave to proceed in forma pauperis, a motion seeking appointment of counsel, and a motion entitled "Motion Seeking an [sic] Cease and Desist Order from the Lower Court and a Stay of Court

Proceedings and Setting Hearing Before the Court in Determination of Plaintiff's Violation of Her Constitutional Rights," which the Court construes as a motion seeking to enjoin a hearing in the Shelby County Chancery Court scheduled for Friday, April 28, 2006. The Court issued an order on April 27, 2006 denying the motion for a cease and desist order.

Based on the information set forth in the plaintiff's affidavit, and in her complaint, the motion to proceed <u>in forma pauperis</u> is GRANTED. The Clerk shall record the defendants as the State of Tennessee and the Shelby County Chancery Court.

The complaint[1] alleges that plaintiff filed a civil action in the Shelby County Chancery Court against First Tennessee Bank and its subsidiary, First Horizon, on October 13, 2004 (the "Chancery Court action"). The complaint in the Chancery Court action alleges that First Tennessee

> poorly service[d] her account, failed to correct the account, lost insurance premiums attached to the loan, continue[d] to accept payments and a loan and insurance when the loan was lost, causing her to receive harassing phone calls [and] disclosure of her account to her minor child, twice attempting wrongful foreclosure of her property, damage to her credit, emotional and mental stress as well as embarrassment of First Tennessee coming to her home and placing a "for sale" sign on her property[.]

---

[1] As a preliminary matter, the pages of this complaint were not scanned in the correct order. To facilitate any further proceedings in this matter, the Clerk shall discard p. 17 of the complaint, which is a duplicate of p. 2, and place pp. 18-19 after p. 2.

Compl., ¶ 2; see also id., ¶ 3. The case was assigned to Chancellor Arnold Goldin. Id., ¶ 2. The plaintiff apparently hoped that, because of the lawsuit, First Tennessee would be required to file a payment history so the status of her account could be resolved. Id., ¶ 4. Shortly after filing her complaint, plaintiff filed a motion for an injunction because First Tennessee allegedly "had begun retaliation by threatening her with foreclosure if she would not dismiss her complaint." Id., ¶ 5. The Chancellor conducted a hearing on the plaintiff's motion on December 13, 2004, id., but refused to admit certain unspecified evidence offered by the plaintiff, id., ¶ 6. Plaintiff further alleges that the Chancellor refrained from entering an order on the plaintiff's motion in exchange for a promise from counsel for First Tennessee "not to do anything until the proceeding was completed," id. The Chancellor directed defense counsel to draft an order of reference so that a special master could be appointed, but the attorney took three months to submit that order. Id. A special master was appointed, the parties submitted briefs, and the special master apparently conducted one or more hearings. Id., ¶¶ 8-12. Plaintiff complains that the Chancellor and the special master did not allow her to present her case fairly. Id., ¶¶ 6, 7, 12, 13.

       Plaintiff alleges that, as a result of the unfair treatment she received in the Chancery Court, she filed a bankruptcy petition. Id., ¶ 15. The complaint alleges, vaguely, that "Ms. Reed stated to the Court that her city and county property taxes were in the same

3

court and that it was unfair for the court to rule on such case while she had a pending suit against the bank. First Tennessee was placed on notice and was not being a paid creditor in her Bankruptcy." Id. The complaint asserts, vaguely, that the bankruptcy judge was willing to hear the matter only if both parties agreed. Id., ¶ 16. An attorney for First Tennessee agreed to have the matter heard by the bankruptcy court, and plaintiff allegedly filed a motion in some unspecified court to remove her Chancery Court action to bankruptcy court. Id. Chancellor Goldin granted an unspecified motion submitted by First Tennessee and, therefore, the bankruptcy court was forced to abstain. Id.[2] The complaint also sets forth some difficulties the

---

[2] The plaintiff filed a pro se Chapter 13 voluntary bankruptcy petition in the United States Bankruptcy Court for the Western District of Tennessee on September 23, 2005, which was docketed as case no. 05-35185. The plaintiff simultaneously commenced an adversary proceeding against First Tennessee, which was docketed as case no. 05-00577, to preclude it from filing proof of claim. On November 8, 2005, First Tennessee filed an objection to confirmation of the plan on the ground that it did not list a monthly mortgage payment to First Tennessee or an arrearage. Because the plaintiff filed to appear at the meeting of creditors, the trustee issued a report and recommendation on January 14, 2006 that the bankruptcy case be dismissed, and the bankruptcy judge so ordered on that date. The case was closed on February 1, 2006.

As to the adversary proceeding, plaintiff filed a complaint against, inter alia, First Tennessee, First Horizon, and the Money Center on September 23, 2005, which was docketed as Adversary No. 05-0577. The complaint alleged that the defendants had commenced foreclosure proceedings against the plaintiff, and otherwise harassed her, although her account was current. Plaintiff filed a supplement to her complaint on September 27, 2005 that contained documentary evidence in support of her claims. On October 27, 2005, defendants filed a motion asking the bankruptcy court to abstain or, in the alternative, to dismiss the adversary proceeding on the ground that the bankruptcy complaint mirrored the pending Chancery Court action and involved a non-core matter. Plaintiff filed a response to the motion to abstain or dismiss on November 7, 2005 in which she contended that she has not received due process in Chancery Court, and she filed an additional response on November 16, 2005. On December 5, 2005, plaintiff filed a document in the adversary proceeding complaining that counsel for First
(continued...)

4

plaintiff experienced in obtaining a copy of a transcript, which she later purchased. Compl., ¶ 17.

The complaint alleges that plaintiff filed a motion for summary judgment in Chancery Court on March 11, 2006. A hearing was held during which the plaintiff allegedly complained to the Chancellor that the report of the special master was tainted by bias and its factual conclusions were contradicted by the transcripts. Id., ¶ 18. The Chancellor allegedly told the plaintiff that he was going to accept the special master's report and, "if she had any problems[,] then she could address it [sic] in objections and appeal." Id., ¶ 19. Plaintiff's motion for summary judgment was either denied or stricken. Id.

The complaint further alleges that the plaintiff filed a complaint with the Tennessee Department of Insurance, presumably about the poor service received from the carrier that was to have made the mortgage payments while the plaintiff was unemployed. Id., ¶ 20. The plaintiff's complaint was allegedly turned over to the Fraud Department by the investigator with the Department of Insurance. Id. The investigation allegedly revealed that the carrier, U.S. Credit, which is not a party to this action, had not been licensed to do business in Tennessee for two years before plaintiff

---

[2] (...continued)
Tennessee were not honoring a prior agreement to have the case heard in bankruptcy court based on the delay in obtaining a ruling from the Chancery Court. Chief Bankruptcy Judge David S. Kennedy issued an order on December 12, 2005 granting the defendants' motion for abstention pursuant to 28 U.S.C. § 1334(c)(1). Judgment was entered on February 2, 2006.

obtained her mortgage loan. Id. First Tennessee later allegedly told the investigator that plaintiff's insurance was with AIG/American General, but plaintiff asserts that those companies have denied that she had a policy with them. Id. The fraud investigator allegedly concluded that plaintiff was the victim of insurance fraud, and the case was given to the Director of Consumer Affairs at the Insurance Department. Id. The Director of Consumer Affairs allegedly told plaintiff the State did not want to get involved in the Chancery Court case and delayed sending her a copy of the investigative file. Id., ¶ 22. The complaint also alleges, vaguely, as follows:

> The lower Court has allowed the Special Master to report on a hearing where there [sic] First Tennessee did not produce a payment history, used the Plaintiff's payment history that the Defendants knew where [sic] in error and 18 months out of day [sic]. First Tennessee produce [sic] no document for a questionable rebuttal or defendant were no Documents submitted to show any proof of payment. Since the report is based on the lower court to correct the problems of First Tennessee as stated by the Special Master, even if there were errors, it would not be provided on the report.

Id., ¶ 23. Plaintiff further alleges that she was told by various state agencies that, if she wanted relief, she would have to go to federal court "because the State does not handle that." Id., ¶ 24.

The complaint alleges that, because plaintiff was not heard in the Chancery Court, she has a right to file an action in federal court pursuant to 28 U.S.C. § 1443. Plaintiff further alleges that state officials in Tennessee, including Governor Phil Bredesen, failed to protect the plaintiff's rights, in violation of "Article

V under the U.S. Constitution." Id., p. 11.[3] The complaint also asserts that "Chancellor Goldin has provided this court jurisdiction under the 14th Article of the U.S. Constitution[4] for knowingly with factual evidence of Special Master Henderson violating Ms. Reed's right to be heard, refusing to correct the violation and allowing a ruling to be made in depriving Ms. Reed of her property." Id.; see also id., p. 12. The complaint concludes as follows:

> By the action of the lower court under Chancellor Goldin and the State of Tennessee refusal to intervene, enforce the laws of the State and the U.S. Constitution and the Constitution of Tennessee 1935, The state had deprived Ms. Reed and her 2 minor children of right to be secure in their home, due and fair process, equal protection of the law, deprived her their right have life, liberty, or property, and the pursuit of happiness. The violation of Ms. Reed constitutional rights in which state and federal laws are violated will result in a wrongful foreclosure and seizure of her home 4th Amendment of the U.S. Constitution.

Id., p. 12.

The prayer for relief asks for the filing of the Chancery Court record in this Court. Id., p. 17. The prayer also asks that, "[u]pon submitting of the evidence of finding, the Court [should] Present this matter before the U.S. Attorney General of the State of Tennessee violating Pro Se litigants under the 14 Article of the U.S. Constitution." Id., p. 18. The plaintiff asks "[t]hat sanction be placed against the State of Tennessee and that a [sic] they be made to comply with the rules of the Court in the rights of person[s]

---

[3] The plaintiff is referring to the Fifth Amendment. Id., p. 12.

[4] The plaintiff is referring to the Fourteenth Amendment. Id., p. 12.

7

under the U.S. Constitution." Id. The plaintiff also seeks appointment of counsel, the ongoing monitoring of the State of Tennessee to ensure that it protects the property rights of residents, and the issuance of an order to the Chancery Court directing it to "Correct all violations pertaining to this case so that Plaintiff may receive a fair, just, and speedy process and be provided due process under the 14 amendment. Id.

The Court is required to screen in forma pauperis complaints and to dismiss any complaint, or any portion thereof, if the action—

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). The plaintiff's complaint is subject to dismissal in its entirety.

As the basis for federal subject-matter jurisdiction, the plaintiff first relies on the civil rights removal statute, 28 U.S.C. § 1443, which provides as follows:

Any of the following civil actions or criminal prosecutions, commenced in a State court[,] may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens

8

> of the United States, or of all persons within the jurisdiction thereof;
>
> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

The civil rights removal statute is inapplicable to this case for two reasons. First, the statute, on its face, authorizes only removal by defendants, not plaintiffs. Second, the phrase "any law providing for . . . equal civil rights" has been interpreted by the Supreme Court as limited to "any law providing for specific civil rights in terms of racial equality." State of Georgia v. Rachel, 384 U.S. 780, 792 (1966).

> Thus, the defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands.

Id. Plaintiff's contention that she is not receiving due process in the Chancery Court provides no basis for removal under § 1443.

Because the complaint asserts that plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution have been violated, the Court CONSTRUES the complaint as arising under 42 U.S.C. § 1983, which provides a cause of action in federal court for persons injured by violations of the U.S. Constitution or federal law by state officials. As so construed, the Court has subject-matter jurisdiction

over this action. For the following reasons, however, the plaintiff is not entitled to relief under § 1983.

First, although the complaint seeks "sanctions" against the defendants, the plaintiff cannot obtain money damages as a matter of law. The only defendants in this case are the State of Tennessee and a chancery court that is an arm of the State of Tennessee.[5] Absent a clear abrogation of immunity by congressional action or an express state waiver of that immunity, the Eleventh Amendment prohibits suits for damages against a state in federal court. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984); Quern v. Jordan, 440 U.S. 332 (1979). Tennessee has not waived its sovereign immunity. Tenn. Stat. Ann. § 20-13-102(a). Therefore, any § 1983 claim for damages against the State of Tennessee or the Shelby County Chancery Court is barred by the Eleventh Amendment.[6]

The plaintiff cannot obtain the injunctive relief sought in the complaint. Pursuant to Ex parte Young, 209 U.S. 123 (1908),

---

[5] The entity known as the Shelby County Chancery Court is, in fact, the Chancery Court for the Thirtieth Judicial District at Memphis, and operates pursuant to state law. See Tenn. Code Ann. § 16-1-101 ("The judicial power of the state is vested in judges of the courts of general sessions, recorders of certain towns and cities, circuit courts, criminal courts, common law and chancery courts, chancery courts, court of appeals, and the supreme court, and other courts created by law.").

[6] Plaintiff's claim pursuant to 42 U.S.C. § 1983 against the State of Tennessee and the Shelby County Chancery Court is also subject to dismissal on the ground that a state is not a person within the meaning of 42 U.S.C. § 1983. Lapides v. Board of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Will v. Michigan, 491 U.S. 58, 71 (1989).

the Eleventh Amendment does not bar suits against state officials in their official capacities for declaratory and injunctive relief. Verizon North Inc. v. Strand, 367 F.3d 577, 581 (6th Cir. 2004); Gean v. Hattaway, 330 F.3d 758, 766 (6th Cir. 2003). In this case, however, the complaint does not sue any state official in his or her official capacity. Therefore, the Court is unable to provide the relief this plaintiff seeks.

The complaint does not state an actionable claim for deprivation of property. The Fourteenth Amendment prohibits a citizen from being deprived of her property without due process of law. In this case, however, the complaint does not allege a Fourteenth Amendment violation for two reasons. First, it does not appear that a foreclosure action has been brought against the plaintiff. Although First Tennessee and First Horizon have, apparently, threatened the plaintiff with foreclosure, no foreclosure action has been filed. The Chancery Court action at issue is a suit filed by the plaintiff alleging accounting errors by the lenders. Thus, it would appear that the plaintiff has not been deprived of her property, and any threat of future deprivation is not ripe for resolution. Second, "[i]n order to be subject to suit under § 1983 claim, defendant's actions must be fairly attributable to the state." Collyer v. Darling, 98 F.3d 211, 231-32 (6th Cir. 1997). The various actions undertaken by First Tennessee and First Horizon do not violate the Fourteenth Amendment because they are not state actors. Brotherton v. Cleveland, 173 F.3d

11

552, 567 (6th Cir. 1999) ("A § 1983 plaintiff may not sue purely private parties."). Thus, in this case no state actor has deprived the plaintiff of her property without due process. At most, plaintiff is unhappy with the way the state courts have decided the action she filed against the lenders about her mortgage loan. The complaint does not state a cause of action under the Fourteenth Amendment for deprivation of property without due process.

Finally, the plaintiff has no claim against the State of Tennessee because the governor and the various state agencies to which she appealed chose not to take action against the lenders or the mortgage insurance carrier. DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989); Smith v. Jackson, No. 93-3052, 1993 WL 241816 (6th Cir. July 2, 1993) (affirming dismissal of claim that police and social worker failed to investigate alleged sexual abuse of child); Langworthy v. Dean, 37 F. Supp. 2d 417, 422-23 (D. Md. 1999) (holding that "there is not a clearly established constitutional right to have claims of criminal activity by a private actor investigated"; collecting cases); Joy v. City of Dayton, No. C-3-90-132, 1991 WL 1092505, at *8 (S.D. Ohio June 28, 1991) ("One does not have a constitutional right to have a police investigation conducted in a particular manner, or to have one conducted at all."); Doe v. Mayor & City Council of Pokomoke City, 745 F. Supp. 1137, 1139 (D. Md. 1990); Crawford v. Lane, No. 85 C 10510, 1988 WL 23799, at

\*1 (N.D. Ill. Mar. 9, 1988); Sellner, 565 F. Supp. at 252, aff'd mem., 796 F.2d 474 (4th Cir. 1986).

Therefore, the Court DISMISSES the complaint in its entirety, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), for failure to state a claim on which relief may be granted. Given the dismissal of this action, the motion for appointment of counsel is DENIED as moot.

The Court must also consider whether plaintiff should be allowed to appeal this decision in forma pauperis, should she seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callahan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that, if a party has been permitted to proceed in forma pauperis in the district court, she may also proceed on appeal in forma pauperis without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. It would be inconsistent for a district court to determine that a complaint does

not warrant service on the defendants, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss the complaint for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by the plaintiff is not taken in good faith. Leave to proceed on appeal in forma pauperis is, therefore, DENIED. Accordingly, if plaintiff files a notice of appeal, she must pay the $455 appellate filing fee in full or file a motion to proceed in forma pauperis in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.[7]

IT IS SO ORDERED this 31st day of May, 2006

S/    Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Effective April 9, 2006, the appellate filing fee increased from $255 to $455.